**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1654
_____

UNITED STATES OF AMERICA

v.

TREVOR STEPHEN,

Appellant

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 3:21-cr-00027-002)
District Judge:  Honorable Robert A. Molloy

_____

Argued on December 9, 2024

Before: CHAGARES, *Chief Judge*; MONTGOMERY-REEVES and FISHER, *Circuit Judges*.

(Opinion filed: January 10, 2025)

Matthew A. Campbell **[ARGUED]**
Office of the Federal Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI 00802
 *Counsel for the Appellant*

Delia L. Smith
Adam Sleeper **[ARGUED]**
Office of the United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802
 *Counsel for the Appellee*

_____

OPINION*

_____

MONTGOMERY-REEVES, *Circuit Judge*.

Trevor Stephen appeals his conviction under 21 U.S.C. § 841 for possession with intent to distribute cocaine. On appeal, Stephen argues that the District Court erred by denying his motions for acquittal and a new trial because the Government did not adduce sufficient evidence at trial for a jury to find him guilty beyond a reasonable doubt. For the reasons discussed below, these arguments fail, and we will affirm the District Court's judgment.

## I.    BACKGROUND

In 2022, a grand jury returned a superseding indictment charging Stephen with conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine.[1] During Stephen's jury trial, the Government called several law enforcement witnesses who testified to the following facts.

Around 10:00pm on the night of November 29, 2021, a tactical flight officer in a surveillance plane, using video surveillance equipment,[2] witnessed a small boat "traveling at a high rate of speed towards St. Thomas" without any lights. App. 309. The

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The superseding indictment included aider and abettor liability under 18 U.S.C. § 2 for the possession with intent to distribute cocaine charge.

[2] The surveillance plane did not have audio surveillance capabilities.

boat entered a bay near the east end of St. Thomas and approached the shore where a pickup truck was backed up to the shoreline. Three people met the boat in the water and quickly offloaded seven bags from the boat into the truck. The flight officer relayed this "very suspicious activity" to agents on the ground, "so that they [could] come and make contact with the truck and the individuals to further investigate." App. 314. Meanwhile, the truck began driving away and the surveillance plane followed overhead, continuing to report the truck's location to agents on the ground. The truck stopped at a residence, and the three people in the truck moved the bags from the bed of the truck to the backseat of the cab. At one point, the driver of the truck went into the residence while the other two people continued moving the bags. All three people got back in the truck and drove to a second residence. The person in the passenger seat then departed, and the person in the backseat moved to the front passenger seat.

Soon thereafter, ground agents pulled up behind the truck and activated their lights and sirens to initiate a traffic stop. The truck fled and drove "erratically at a high rate of speed." App. 326. The truck sideswiped another vehicle before turning off the main road. The truck came to a stop, and the two people in the truck threw the bags from the truck into the brush. The truck then slowly drove back towards the main road where the ground agents had arrived and were waiting to intercept the truck. Before the truck reached the agents, the flight officer told the agents that something appeared to have been thrown out of the left side of the truck. The agents waited for the truck at the bottom of the dead-end road, and when it approached, they identified themselves as law enforcement. The agents removed the two people from the truck and placed them under

3

arrest.[3]  After the arrests, agents noticed an oil trail behind the truck, followed the oil trail up the road to a dead end, and discovered the bags where the flight agent had seen the bags thrown into the brush.  The agents found roughly 210 kilograms of cocaine, worth approximately $2.1 million in the bags.[4]

After the Government rested its case, Stephen testified.  His testimony about the events of the night of November 29 was largely consistent with the testimony of the agents but with two key differences.  First, Stephen testified that Robinson pulled out a gun when they were waiting on the beach for the boat and threatened him with it repeatedly throughout the events of the evening.  Second, after they threw the bags out of the truck and were driving back down the dirt road, Robinson threw the gun "in the bush" and then told Stephen "Do not say anything.  Do not say anything before anything happens to you or your family.  Don't say nothing."  App. 758–59.  Stephen testified that he was frightened because Robinson knew where he lived, and Stephen feared for his life and his family's safety.

After the close of testimony, Stephen renewed the motion for acquittal that was originally denied at the close of the Government's case in chief.  The District Court took the motion under advisement.  The jury returned a verdict of not guilty on the conspiracy charge and guilty on the possession with intent to distribute charge.  Stephen moved for a

---

[3] At trial, the agents identified the driver as Russell Robinson and the passenger as Stephen.

[4] A chemist testified at trial about the nature and quantity of the substance in the bags.

new trial under Rule 33. At sentencing, the District Court denied Stephen's renewed motion for acquittal and his motion for a new trial. This appeal followed.

## II.  DISCUSSION[5]

Stephen makes two arguments on appeal. First, he argues that the District Court erred by denying his motion for acquittal because the Government did not present sufficient evidence to prove that Stephen (1) knew there was a controlled substance in the bags or (2) intended to distribute the controlled substance in the bags. Second, he argues that the District Court erred by denying his motion for a new trial premised on the same grounds and the inconsistent verdicts. Neither argument prevails.

### A.  Motion for Acquittal

"We exercise plenary review over a district court's grant or denial of a motion for acquittal based on the sufficiency of the evidence, applying the same standard as the district court." *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008) (citing *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). "[A] district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of [guilt] beyond a reasonable doubt based on the available evidence.'" *Brodie*, 403 F.3d at 133 (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)). "Because the reviewing court must treat all of the incriminating evidence as true and credible, '[t]he burden on a defendant who raises a challenge to the

---

[5] The District Court had jurisdiction under 48 U.S.C. § 1612(a) and 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

sufficiency of the evidence is extremely high.'" *United States v. Riley*, 621 F.3d 312, 329 (3d Cir. 2010) (alteration in original) (quoting *United States v. Lore*, 430 F.3d 190, 203–04 (3d Cir. 2005)).

"Under this particularly deferential standard, we 'must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury.' Furthermore, 'we review the evidence as a whole, not in isolation, and ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (internal citation omitted) (alterations in original) (first quoting *Brodie*, 403 F.3d at 133; and then quoting *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010)). This Court can overturn a verdict "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *United States v. Moyer*, 674 F.3d 192, 206 (3d Cir. 2012) (quoting *Riley*, 621 F.3d at 329).

Stephen challenges the sufficiency of the evidence only as to two elements of the charged offense: (1) that Stephen knew that the bags contained a controlled substance; and (2) that Stephen intended to distribute the controlled substance. Because there is evidence in the record from which a rational juror could find Stephen knew that the bags contained a controlled substance and intended to distribute that substance, the District Court did not err by denying the motion for acquittal.

### 1. Knowledge of Controlled Substance

Stephen argues that there is insufficient evidence for a jury to find that he knew the bags contained a controlled substance. "The prosecution may satisfy its burden entirely through circumstantial evidence." *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (citing *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)). And "[c]ircumstantial inferences drawn from the evidence" are permissible as long as they "bear a 'logical or convincing connection to established fact.'" *Caraballo-Rodriguez*, 726 F.3d at 425 (quoting *United States v. Cartwright*, 359 F.3d 281, 291 (3d Cir. 2004)). The circumstantial evidence supports a reasonable inference that Stephen knew that the bags contained a controlled substance. Robinson and Stephen met a boat with its lights completely off, in the dead of night, on a secluded beach and quickly unloaded seven bags into their truck and drove away. When law enforcement later tried to pull over the truck, they fled and once out of sight, ditched the bags in the brush. Based on these facts, a rational juror could conclude that Stephen knew the bags contained a controlled substance. *Cf. Caraballo-Rodriguez*, 726 F.3d at 431–33 ("With this in mind, we specifically disavow the reasoning we previously embraced—that the jury's verdict could not stand when the evidence was as consistent with contraband other than controlled substances[.]").

### 2. Intent to Distribute

Stephen also contends that there is insufficient evidence for a jury to find that he intended to distribute the cocaine. Stephen argues that there is no evidence that he intended to distribute the cocaine to anyone other than Robinson, and because Robinson

7

already possessed the cocaine, this does not qualify as distribution. "When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone." *United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992) (first citing *United States v. Ocampo*, 937 F.2d 485, 488 (9th Cir. 1991); then citing *United States v. Brown*, 921 F.2d 785, 792 (8th Cir. 1990); and then citing *United States v. Montoya*, 782 F.2d 1554, 1555 (11th Cir. 1986)). Here, the quantity of drugs, roughly 210 kilograms, worth an estimated $2.1 million dollars, is sufficient to support the inference that neither Stephen nor Robinson were possessing the cocaine solely for personal use. Indeed, a rational juror could infer that either Stephen intended to personally distribute the cocaine to someone other than Robinson or that he intended for Robinson to distribute the cocaine to a third person and was facilitating that distribution through his actions assisting with the receipt and transport of the cocaine such that he is liable under an aiding and abetting theory. *See Mercado*, 610 F.3d at 846–49. Because these are inferences that a rational juror could draw based on established facts—the sheer volume of cocaine being received and transported by Robinson and Stephen—the fact that inferences favoring Stephen's theory of the case could also be drawn from the established facts is not a basis for reversing the jury's verdict. *See Caraballo-Rodriguez*, 726 F.3d at 432 ("Reversing the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges[.]").

Because there is sufficient evidence in the record for a rational juror to find that Stephen knew the bags contained a controlled substance and that he intended to distribute

the controlled substance, the District Court did not err in denying Stephen's motion for acquittal.

### B. Motion for a New Trial

"We review the denial of a Rule 33 motion for abuse of discretion." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (citing *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002)). "The District Court abuses its discretion if its analysis and conclusions are 'arbitrary or irrational,' or if its 'decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."'" *United States v. Gonzalez*, 905 F.3d 165, 195 (3d Cir. 2018) (quoting *United States v. Schneider*, 801 F.3d 186, 198 (3d Cir. 2015)). Unlike a motion for acquittal based on insufficiency of the evidence, "when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Silveus*, 542 F.3d at 1004 (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). But "[a] district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that "there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted."'" *Brennan*, 326 F.3d at 189 (internal citations omitted) (quoting *Johnson*, 302 F.3d at 150). Therefore, "[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases." *Id.* (alteration in

9

original) (quoting *Government of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

Stephen argued in front of the District Court, and argues on appeal, that a new trial should have been granted based on insufficient evidence coupled with the inconsistent verdicts. But, as discussed above, there was sufficient evidence for a rational juror to find Stephen guilty of possession with intent to distribute. While considering Stephen's motion for a new trial, the District Court appropriately considered the evidence, including Stephen's testimony, which it did not find credible. And the Supreme Court has explained that the only thing an inconsistent verdict can tell us is "that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that [the jurors] were not convinced of the defendant's guilt." *United States v. Powell*, 469 U.S. 57, 64–65 (1984) (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)). The District Court applied the correct legal standard in concluding that there was not a serious danger that a miscarriage of justice had occurred. We cannot conclude that the District Court abused its discretion in denying Stephen's motion for a new trial.

## III.  CONCLUSION

For the reasons discussed above, we will affirm the District Court's judgment.