[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15402
Non-Argument Calendar
_____

D.C. Docket No. 0:11-cr-60147-RNS-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS MANUEL DORADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 5, 2014)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

After pleading guilty, Jesus Manuel Dorado appeals his 60-month sentence for conspiracy to encourage and induce aliens to reside in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I), and (a)(1)(B)(i), and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349. On appeal, Dorado argues that the district court: (1) violated Federal Rule of Criminal Procedure 32 by failing to ensure that Dorado had reviewed his revised Presentence Investigation Report ("PSI"); (2) clearly erred in refusing to give him a minor role reduction pursuant to U.S.S.G. § 3B1.2(b); and (3) imposed a sentence that was substantively unreasonable. After review, we affirm.

## I.  RULE 32 VIOLATION

Under Rule 32, at sentencing, the district court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A). When, as here, the sentencing error is raised for the first time on appeal, we review only for plain error. See United States v. Doe, 661 F.3d 550, 565 (11th Cir. 2011).

To prevail under the plain error standard of review, the defendant must show that "(1) an error occurred, (2) the error was plain, (3) the error affected substantial rights in that it was prejudicial and not harmless, and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011). To show that a

2

sentencing error "affected substantial rights," the defendant must show that but for the error, there was "a reasonable probability of a lesser sentence." See United States v. Underwood, 446 F.3d 1340, 1343-44 (11th Cir. 2006).

Here, the record belies Dorado's claim that the district court failed to comply with Rule 32(i)(1)(A). At the beginning of the sentencing hearing, the district court asked the parties whether they had received and reviewed the PSI. Dorado's counsel stated that he had received the revised PSI and addendum on September 21, 2012, and reviewed the addendum, but failed to read "the body" of the revised PSI "until . . . this morning when I spoke to [Dorado]." The district court also asked Dorado directly whether he had reviewed the PSI, and Dorado said that he had reviewed "this one" with his attorney. Under these circumstances, the record shows that the district court satisfied the requirements of Rule 32(i)(1)(A).

In any event, Dorado cannot show that the alleged error affected his substantial rights. Dorado does not claim that he did not review the original PSI. The revised PSI contained only one change. It included two additional criminal history points because Dorado was on probation while participating in the charged conspiracies, which changed his criminal history category from II to III. Dorado's counsel acknowledged the change in Dorado's criminal history category from II to III when the district court questioned him about the revised PSI, and defense counsel explicitly declined to object to that change as a miscalculation. In fact,

defense counsel candidly acknowledged that he and the prosecutor had originally calculated Dorado's criminal history category as category III—the level in the revised PSI. Instead, defense counsel argued only that a criminal history category III overrepresented the seriousness of Dorado's prior convictions, warranting a downward variance.[1]

Moreover, Dorado does not now contend that the additional two criminal history points in the revised PSI amounts to a miscalculation.[2] In fact, Dorado does not identify any objection to the revised PSI that he could have raised, but did not, much less an objection that had a "reasonable probability" of being sustained and lowering his sentence. Dorado argues that his appellate counsel was "appointed by the court on a cold-record basis, without access to investigative and other resources available to counsel at the trial level," and should not be expected to identify objections to the revised PSI that could have changed the outcome of his sentencing. However, that is what is required to show plain error.

---

[1]To the extent Dorado suggests he did not have adequate notice of the revised PSI, this argument is not supported by the record. Defense counsel acknowledged that he had received the revised PSI on September 21, a full two weeks before the October 5 sentencing hearing, and had reviewed the PSI addendum at that time. See Fed. R. Crim. P. 32(g) (requiring the probation officer to submit any revised PSI with the addendum to the court and the parties seven days before the sentencing hearing).

[2]According to undisputed portions of the PSI, Dorado participated in the instant immigration fraud scheme from December 2007 to July 2009. During this time, on October 13, 2008, Dorado began serving two years' probation for Florida state court convictions for carrying a concealed firearm and possessing/selling/delivering alprazolam. Thus, Dorado committed the instant conspiracy offenses while serving a probation sentence. Under these circumstances, two points were properly added to Dorado's criminal history score. See U.S.S.G. § 4A1.1(d).

4

## II.  MINOR ROLE REDUCTION

A defendant receives a two-level reduction in his offense level if he was a minor participant in the criminal activity.  U.S.S.G. § 3B1.2(b).  A minor participant is less culpable than most other participants, but his role could not be described as minimal.  Id., cmt. n.5.  The defendant must prove his minor role in the offense by a preponderance of the evidence.  United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).[3]

Whether to apply a minor role reduction "is heavily dependent upon the facts of the particular case."  U.S.S.G. § 3B1.2, cmt. n.3(C).  "Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense."  United States v. Alvarez-Coria, 447 F.3d 1340, 1343 (11th Cir. 2006).  Additionally, as long as the record supports the district court's determination and the court clearly resolves any factual disputes, the court need not make any specific findings other than its ultimate determination of the defendant's role in the offense.  De Varon, 175 F.3d at 939-40.

As to the second prong, the district court is permitted, but not required, to "measure the defendant's conduct against that of other participants" but only

---

[3]A district court's determination of a defendant's role in the offense is a finding of fact that we review for clear error.  De Varon, 175 F.3d at 938.

"where the record evidence is sufficient." Id. at 934.  Furthermore, "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." Id. at 944.  Thus, even if a defendant played a smaller role in a conspiracy than other co-conspirators, he still may not be eligible for a role reduction if he played a significant role in the conspiracy. United States v. Keen, 676 F.3d 981, 997 (11th Cir.), cert. denied, 133 S. Ct. 573 (2012).

On the record before us, we cannot say the district court's refusal to give Dorado a two-level minor role reduction was clear error.  Dorado served as director of Seamens Harvest Ministries Organization, Inc. ("SHM"), along with his mother, codefendant Ana Zoila Caceres, and stepfather, codefendant Alberto Alers. SHM purported to provide immigration consulting services to the general public by preparing and filing applications for immigration benefits on behalf of illegal aliens.  Dorado's ex-girlfriend, codefendant Yvette Rossy Reyes, was one of six or seven office employees of SHM.

While codefendant Caceres handled SHM's finances and the day-to-day operations, Defendant Dorado and codefendant Alers handled consultations with hundreds of illegal aliens.  Dorado and Alers falsely represented to these aliens that SHM could qualify them for "religious workers" status and extracted "donations"

6

and other payments from them.  After an alien paid an initial donation and other fees, Alers, Caceres, Dorado, and codefendant Reyes prepared and mailed the false immigration paperwork and supporting documentation.

In calculating Defendant Dorado's offense level, the district court did not hold Dorado accountable for the total amount of losses from the scheme ($4,078,092.52), but instead only for the losses incurred while Dorado participated in the scheme ($2,375,944.74).  Moreover, Dorado played a significant role as to the losses attributed to him.  In addition to being one of SHM's directors, Dorado met personally with the aliens, collected donations and fees from them, falsely represented to them that he could help them obtain lawful immigration status, instructed the aliens on steps to take to give the scheme the appearance of legitimacy, and assisted the aliens in submitting fraudulent immigration documents.

Dorado complains that the district court failed to analyze the comparative culpability of Dorado and the other participants in the conspiracy under the second De Varon prong.  Nothing in De Varon requires the district court to reach the second prong of the analysis.  See De Varon, 175 F.3d at 934.  Indeed, De Varon recognizes that, "in many cases," the first prong "will be dispositive."  Id. at 945.  In addition, the district court is not required to make explicit subsidiary findings;

rather, "a simple statement" of the district court's ultimate conclusion as to role is sufficient.  Id. at 939.

Furthermore, the fact that codefendants Caceres and Alers, the masterminds and leaders of the fraud scheme, were more culpable does not mean Dorado's role was minor.  And, the record does not support Dorado's claim that his role was similar to codefendant Reyes's role.  Reyes was merely a clerical worker, preparing fraudulent documents and helping Caceres train other office workers to prepare fraudulent documents.  There is no evidence Reyes performed the sort of "front office" functions that Dorado did, such as meeting with aliens, advising them, or accepting money from them.  Dorado had a greater role in the scheme than Reyes and was integral to the conspiracy while he participated in it.  In sum, the district court's conclusion that Dorado played a more than minor role as to the losses attributed to him is supported by the record.

### III.  REASONABLENESS

We review the reasonableness of a sentence under the deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively unreasonable under the totality of the circumstances.  United States v. Pugh, 515 F.3d 1179,

8

1190 (11th Cir. 2008).[4] We will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [18 U.S.C.] § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. at 1191 (quotation marks omitted). The party challenging the sentence bears the burden to show that it is unreasonable in light of the record and the § 3553(a) factors. Id. at 1189.[5]

Dorado has not shown that his sentence is substantively unreasonable. Dorado's 60-month sentence was below his advisory guidelines range of 78 to 97 months and well below the statutory maximums for either of his offenses (ten years for the alien conspiracy and twenty years for the mail fraud conspiracy), both indications that Dorado's sentence was reasonable. See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (stating that, although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect it to be so); United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008)

---

[4]Apart from the issues already addressed, Dorado does not claim any procedural error occurred at his sentencing or argue that his sentence is procedurally unreasonable.

[5]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

(stating that a sentence imposed well below the statutory maximum penalty is an indication of reasonableness).

The district court heard Dorado's arguments that his criminal history category overrepresented the seriousness of his criminal history and explicitly rejected it. The district court also heard Dorado's mitigation arguments that he left the scheme and turned over a new leaf, started a legitimate business, and took sole custody of his daughter. In imposing the sentence, however, the district court emphasized the seriousness of Dorado's offenses and the number of victims involved. Although Dorado contends that the district court gave too much weight to the seriousness of his offense, the weight to be accorded the § 3553(a) factors is committed to the district court's sound discretion. See United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007). Moreover, while the district court must consider all the § 3553(a) factors, it may "attach 'great weight' to one factor over others," United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009), and is not required to discuss each factor explicitly, Gonzalez, 550 F.3d at 1237. Considering the totality of the circumstances, we cannot say the district court abused its discretion in imposing a 60-month sentence.

**AFFIRMED.**